**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

LAUREN CRIGLER,

    Petitioner,

vs.                                         Case No. 3:17-cv-491-J-34MCR

CHEMONICS INTERNATIONAL, INC. and
ALLIED WORLD NATIONAL ASSURANCE
COMPANY/BROADSPIRE,

    Respondents.
_____/

# O R D E R

**THIS CAUSE** is before the Court on the parties' cross-motions for summary judgment, filed on November 6, 2017. See Motion for Summary Judgment and Memorandum of Law (Doc. 21; Petitioner's Motion) and Respondents' Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 23; Respondents' Motion). On June 5, 2017, Petitioner Lauren Crigler filed the Response (Doc. 26; Petitioner's Response), and on December 9, 2017, Respondents Chemonics International, Inc. ("Chemonics") and Allied World National Assurance Company/Broadspire[1] ("Allied," and collectively, "Respondents") filed Respondents' Response in Opposition to Petitioner's Motion for Summary Judgment and Memorandum of Law (Doc. 28; Respondents' Response). Accordingly, this matter is ripe for review.

---

[1] Respondents assert that Allied World National Assurance/Broadspire's proper name is "Allied World National Assurance." See Respondents' Motion at 1; Respondents' Response at 1.

**I.     Background[2]**

In June 2013, Chemonics hired Petitioner to work as a Health Systems Senior Technical Advisor in Rwanda. See Order Granting Motion for Summary Decision/Compensation Order (Doc. 1-1; Nov. 21, 2014 SJ Order) at 2. During that employment, Petitioner strained her back and suffered physical and psychological injuries, which she believed to have related to her employment. Id. at 3. After an exchange of e-mails with Petitioner, Chemonics' Benefits and Compensation Manager advised Petitioner to file a claim under the Longshore and Harbors Workers Compensation Act ("LHWCA"), 33 U.S.C. §§ 901 et. seq., as extended by the Defense Base Act ("DBA"), 42 U.S.C. §§ 1651 et. seq. (collectively, the "Act"), with the Office of Workers' Compensation Programs ("OWCP"), United States Department of Labor. See Nov. 21, 2014 SJ Order at 3.

Petitioner filed her claim under the Act on July 10, 2014. Id. In the claim, Petitioner "identified November 3, 2013, as the date of injury, and May 1, 2014, as the date her pay was stopped." Id. (citing Petitioner's claim for benefits ("Form LS-203")). As a result of her injuries, Petitioner sought compensation and medical benefits.

On November 21, 2014, Administrative Law Judge ("ALJ") Paul C. Johnson granted Petitioner's motion for summary judgment on her claim. See generally Nov. 21, 2014 SJ Order at 7. Specifically, ALJ Johnson determined that Petitioner was entitled to compensation and benefits, and ordered Respondents to pay Petitioner "compensation for temporary total disability at the maximum compensation rate, commencing on May 1,

---

[2]     Because this case is before the Court on cross-motions for summary judgment, the Court will, when addressing the merits of either party's motion, view the facts presented in the light most favorable to the party opposing summary judgment. The Court will so note its perspective when appropriate. The facts recited in this section are either undisputed, or any disagreement has been indicated. See T-Mobile S. LLC v. City of Jacksonville, Fla., 564 F. Supp. 2d 1337, 1340 (M.D. Fla. 2008).

2014[,] and continuing, together with interest on the unpaid compensation at the legal rate," and to "furnish to [Petitioner] all medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus, for such period as the nature of [Petitioner]'s injury or the process of her recovery may require." Id. Further, ALJ Johnson ordered the District Director to "make all computations necessary to effect [its] Order." Id. Neither party appealed the Nov. 21, 2014 SJ Order.[3]

On June 26, 2015, District Director Kristina K. Hall ordered Respondents to show cause why they failed to provide Petitioner medical care for her work related injuries and why a declaration of default should not have been made. See Order to Show Cause (Doc. 1-2). The parties dispute whether Respondents responded to the Order to Show Cause, and neither has submitted evidence in support of its position. See Application to Enforce an Order (Doc. 1; Application) ¶10; Respondents Amended Answer and Affirmative Defenses to the Petitioner's Application to Enforce an Order (Doc. 20; Answer) ¶10. Nevertheless, the record reflects that Counsel for Petitioner repeatedly submitted medical bills to Respondents for reimbursement. See Application ¶11. In response to one such request, on October 6, 2015, Counsel for Respondents asked for clarification regarding which bills Petitioner paid, and requested that Petitioner execute two medical releases in order to permit her psychiatrist to release her medical report. See October 6, 2015 Letter (Doc. 1-3).

On November 4, 2015, Petitioner requested that ALJ Johnson issue a supplemental order enforcing the Nov. 21, 2014 SJ Order. See Petitioner's Motion at 4. ALJ Johnson

---

[3] Petitioner contends that Chemonics "moved to reconsider" the Nov. 21, 2014 SJ Order and that "reconsideration was quickly denied." See Petitioner's Motion at 3. Although Petitioner has failed to submit any evidence in support of this contention, Respondents do not deny it.

denied Petitioner's request because he lacked enforcement power.  Id.  As such, on January 13, 2016, Petitioner initiated Case No. 1:16-cv-26-CCE-JLW in the Middle District of North Carolina (the "N.C. Action") seeking to enforce the Nov. 21, 2014 SJ Order.  See Complaint (Doc. 23-3; N.C. Complaint).  However, the court dismissed the N.C. Action without prejudice on the grounds that it lacked subject matter jurisdiction to enforce the Nov. 21, 2014 SJ Order because it was not a final order.  See Order and Judgment (Doc. 23-4; N.C. Order).

On January 28, 2016, a claims examiner held an informal conference to address Petitioner's request that Respondents reimburse her for medical expenses and provide authorization for a medical examination at Johns Hopkins medical center.  See Memorandum of Informal Conference (Doc. 28-1; Feb. 5, 2016 MIC) at 1.  Prior to giving such authorization, Respondents wanted Petitioner to obtain a second medical opinion.  Id.  On February 5, 2016, in an informal memorandum, the claims examiner advised Petitioner to continue submitting her bills to Respondents for reimbursement and noted that Respondents had the right to require Petitioner to obtain a second medical opinion before authorizing her to go to Johns Hopkins.  Id. at 2.

The claims examiner held another informal conference on November 7, 2016.  See Memorandum of Informal Conference (Doc. 1-4; Nov. 15, 2016 MIC) at 1.  At that conference, Petitioner sought reimbursement for all of her out of pocket expenses, including the cost of travel to her health care providers and the cost of prescriptions she paid in the absence of a prescription card from Respondents.  Id. at 2.  Petitioner subsequently presented a chart detailing her bills, how much she paid, how much is outstanding, and her travel expenses.  See id., Ex. A: Lauren Crigler Medical Expenses

(Exhibit A).[4] In response to Petitioner's request for reimbursement, Respondents contended that some of Petitioner's bills appeared unrelated to her work injury or had already been paid, and that Petitioner should be using the prescription card provided. See Nov. 15, 2016 MIC at 2. Respondents also requested additional time to resolve the matter. Id. In the Nov. 15, 2016 MIC, the claims examiner summarized the parties' positions and stated that all of the bills listed in Exhibit A "seem[ed] legitimate and appear[ed] to be related to medical care for the work related injury." Id. Accordingly, the claims examiner recommended that

1. The employer/carrier pay the bills listed in Exhibit A as per the Claimant's request.

2. The employer/carrier work to expedite payment of all bills that are not in question that they have the proper receipts to support the request for payment such as bills for travel expenses.

3. The employer/carrier should report back on the status of unpaid bills to the District Office within the next sixty days as requested.

Id. at 3.

On December 29, 2016, Petitioner's Counsel wrote a letter to the claims examiner advising that Respondents failed to make any payments. See December 29, 2016 Letter (Doc. 23-2). In that letter, Petitioner requested an assessment of a 20% penalty as well as attorneys' fees. Id.

On January 12, 2017, in accordance with the Nov. 15, 2016 MIC, Respondents filed their status report. See January 12, 2017 Status Report (Doc. 28-2; Status Report). In it, Respondents noted that a review of Petitioner's medical records demonstrated that some of the expenses listed in Exhibit A were unrelated to Petitioner's work injury and

---

[4] Although Respondents contend that Petitioner sought $203,691.35, see Respondents' Response at 6, Exhibit A appears to reflect that Petitioner requested $203,661.35. See Exhibit A.

some had already been paid. Id. at 2-4. They also questioned whether Petitioner received all of the treatments described. Id. Respondents acknowledged that they were responsible for $13,354.35 of the expenses, but asserted that because they were entitled to a credit due to an inadvertent double payment, and they only owed Petitioner $8,711.86. Id. at 4. Chemonics issued a check in that amount on April 27, 2017. See Check E-Mail (Doc. 28-3) at 3.

On the same day, Petitioner initiated this action by filing the Application. See generally Application. Petitioner seeks: (1) entry of an order enforcing the Nov. 14, 2014 SJ Order pursuant to 33 U.S.C. § 921(d) (Count I); (2) entry of an order directing Respondents "to pay all past due bills for pain management, mileage and other medical treatment granted in the Order" (Count II); and (3) an award of attorney's fees pursuant to 33 U.S.C. § 928 (Count III). Id. at 3. In Petitioner's Motion, Petitioner contends that she is entitled to entry of summary judgment in her favor because: (1) the claims examiner calculated the amount due in the Nov. 15, 2016 MIC, (2) the Nov. 15, 2016 MIC was made in accordance with the law, and (3) Respondents failed to comply with its terms. See generally Petitioner's Motion. Conversely, Respondents seek entry of summary judgment in their favor on the ground that the Nov. 15 2016 MIC was not a final compensation order which the Court would have jurisdiction to enforce. See generally Respondents' Motion; Respondents' Response.

## II.     Standard of Review

Although the parties seek entry of summary judgment under Rule 56, Federal Rules of Civil Procedure (Rule(s)), the thrust of their dispute is whether the Court has subject matter jurisdiction over this action. Challenges to subject matter jurisdiction are ordinarily reviewed under Rule 12(b)(1). Thus, the Court will review the cross-motions under Rule 12(b)(1) despite the parties' failure to cite the appropriate rule. See Warner v. Contract Claims Servs., Inc., No. 7:17-CV-17-FL, 2017 WL 5075250, at \*\*1-2, 4 (E.D.N.C. Nov. 3, 2017) (dismissing an LHWCA enforcement action for lack of subject matter jurisdiction under Rule 12(b)(1)).

Federal courts are courts of limited jurisdiction "'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." See Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 409 (11th Cir. 1999) (quoting Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994)). Indeed, jurisdiction is the power of the Court to declare the law. Id. at 410. "When a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power." Id. at 409 (internal quotation omitted). Such action offends the "'principles of separation of powers.'" Id. at 410 (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998)). As such, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, it must dismiss" the claim. See Rule 12(h)(3); see also Univ. of S. Ala., 168 F.3d at 410 ("Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.").

The jurisdiction of the federal court may be attacked facially or factually. Morrison v. Amway Corp., 323 F. 3d 920, 924 n.5 (11th Cir. 2003). In a facial challenge, a court assumes the allegations in the complaint are true and determines whether the complaint sufficiently alleges a basis for subject-matter jurisdiction. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). On the other hand, factual attacks "challenge the 'existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" Id. (citation omitted). In considering a factual attack on subject-matter jurisdiction, the Court is free to weigh the facts and is not constrained to view them in the light most favorable to the plaintiff. Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F. 3d 1271, 1279 (11th Cir. 2009). That is, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue." Morrison, 323 F. 3d at 925. "'The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim.'" Williams v. Poarch Band of Creek Indians, 839 F.3d 1312, 1314 (11th Cir. 2016) (quoting Sweet Pea Marine Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1247 (11th Cir. 2005)). Here, Respondents appear to assert a factual attack because they rely on extrinsic evidence and do not assert lack of subject matter jurisdiction solely on the basis of the pleadings.

**III. Applicable Law**

"Congress enacted the LHWCA in 1927 to provide workers' compensation coverage to certain maritime employees." ITT Base Servs. v. Hickson, 155 F. 3d 1272, 1274 (11th Cir. 1998). In 1941, Congress enacted the DBA "to extend the workers' compensation coverage of the LHWCA to employees working on air, military, and naval

bases outside the continental United States." Id. (citing 42 U.S.C. § 1651(a)). The provisions of the LHWCA govern claims arising under the DBA, except to the extent that the DBA modifies a provision of the LHWCA, in which case the DBA controls. Id.

In order to obtain compensation under the Act, a worker must file a claim with an OWCP district director.[5] See Dir., Office of Workers' Comp. Programs v. Newport News Shipbuilding & Dry Dock Co., 514 U.S. 122, 125 (1995) (citing 33 U.S.C. § 919(a), and 20 C.F.R. §§ 701.301(a), 702.105)). After performing an initial investigation, the district director is authorized to resolve the dispute by holding an informal conference.[6] See 33 U.S.C. § 919(c); 20 C.F.R. § 702.311. If the parties agree "on all issues," then the district director must either: (a) "embody the agreement in a memorandum" within 10 days of the conference, or (b) issue a formal compensation order within 30 days. See 20 C.F.R. § 702.315(a). A compensation order is an "order rejecting the claim or making the award." See 33 U.S.C. § 919(e). Notably, if either party requests a formal compensation order, then the district director must "prepare, file and serve [one] in accordance with § 702.349." Id. Section 702.349 provides that the district director:

> must formally date and file the transcript, pleadings, and compensation order in his office . . . by the close of business on the next succeeding working day, and . . . on the same day as the filing was accomplished, serve a copy of the compensation order on the parties . . . by certified mail unless a party has previously waived service . . .

See 20 C.F.R. § 702.349(a).

---

[5] Under the LHWCA, the term "district director" is used interchangeably with "deputy commissioner." See 20 C.F.R. § 701.301(7).

[6] A claims examiner may hold such a conference as a designee of the district director. See 20 C.F.R. § 702.312; Rodriguez v. Compass Shipping Co., 456 F. Supp. 1014, 1019-20 (S.D.N.Y. 1978) (recognizing that a claims examiner is a district director's delegee), aff'd, 617 F. 2d 955 (2d Cir. 1980).

Notably, when the parties do not agree on all issues, the district director must evaluate the evidence and "prepare a memorandum of conference setting forth all outstanding issues, such facts or allegations as appear material and his or her recommendations and rationale for resolution of such issues."  See 20 C.F.R. § 702.316. The district director must send this memorandum to the parties, who each have 14 days to agree or disagree with the recommendations.  Id.  If the parties disagree, the district director can either schedule additional conferences, or prepare the case for transfer to an ALJ for a formal hearing.  Id.  Within 20 days of a formal hearing, the ALJ must "prepare[ ] a final decision and order, in the form of a compensation order, with respect to the claim, making an award to the claimant or rejecting the claim."  See 20 C.F.R. § 702.318.  Then, the ALJ must deliver the compensation order to the district director, to be filed and served pursuant to section 702.349.  See 20 C.F.R. § 702.349.  A party may appeal the order to the Benefits Review Board ("BRB") within thirty days of its filing with the district director. See 20 C.F.R. §§ 702.391, 702.392.  Although the LHWCA provides for "direct review of the Board's decision to the federal court of appeal where the injury occurred," the DBA provides for direct review by the district court.  See 42 U.S.C. § 1653(b); 33 U.S.C. § 921(c); see also ITT Base Servs., 155 F. 3d at 1274-75 (recognizing this modification); Lee v. Boeing Co., 123 F. 3d 801, 804-05 (4th Cir. 1997) (same); AFIA/CIGNA Worldwide v. Felkner, 930 F. 2d 1111, 1116 (5th Cir. 1991) (same); Home Indem. Co. v. Stillwell, 597 F. 2d 87, 89 (6th Cir. 1979) (same).

In addition to direct review under the DBA, the district court also has jurisdiction to enforce formal compensation orders pursuant to 33 U.S.C. § 918 and § 921(d) of the DBA. See 42 U.S.C. § 1653(b).  While a § 918 "proceeding may be used to compel payment of

compensation delinquent for thirty days or more under an effective [supplementary] order," a § 921 proceeding is used to enforce payment under a final order." Henry v. Gentry Plumbing & Heating, 704 F. 2d 863, 864 (5th Cir. 1983). In this action, Petitioner seeks to enforce either the Nov. 21, 2014 SJ Order or the Nov. 15, 2016 MIC[7] pursuant to § 921(d), which provides:

> If any employer or his officers or agents fails to comply with a compensation order making an award, <u>that has become final</u>, any beneficiary of such award or the deputy commissioner making the order, <u>may apply for the enforcement of the order to the Federal district court</u> for the judicial district in which the injury occurred . . . <u>If the court determines that the order was made and served in accordance with law, and that such employer or his officers or agents have failed to comply therewith, the court shall enforce obedience to the order</u> by writ of injunction or by other proper process, mandatory or otherwise, to enjoin upon such person and his officers and agents compliance with the order.

33 U.S.C. § 921(d) (emphasis added). In a § 921(d) proceeding, a "final" compensation order is "the ticket to admission to the district court." Connors v. Amax Coal Co., 858 F. 2d 1226, 1229 (7th Cir. 1988). "A final order is 'one which ends the litigation . . . and leaves nothing for the court to do but execute the judgment.'" Cooper Stevedoring Co. v. Dir., Office of Workers' Comp. Programs, 826 F. 2d 1011, 1014 (11th Cir. 1987) (per curiam) (citation omitted).[8] If a district court determines that a final order "was made and

---

[7] In the Application, Petitioner only seeks to have the Court enter an order enforcing the Nov. 21, 2014 SJ Order. See Application ¶18. However, in Petitioner's Motion, she asserts that the Nov. 15, 2016 MIC is a final and enforceable order. See Petitioner's Motion at 1, 5. Further, in Petitioner's Response, she contends that the Nov. 21, 2014 SJ Order and the Nov. 15, 2016 MIC are both enforceable orders. See Petitioner's Response at 1. Although a plaintiff cannot amend a complaint or application by arguing in a motion for summary judgment or a response to it, see Payne v. Ryder Sys., Inc. Long Term Disability Plan, 173 F.R.D. 537, 540 (M.D. Fla. 1997) ("Courts have held that a plaintiff cannot amend a complaint through statements in a brief"), the Court in an abundance of caution will consider both the Nov. 21, 2014 SJ Order and the Nov. 15, 2016 MIC.

[8] "If an order does not end the litigation, it must be determined if the collateral order doctrine applies." Cooper Stevedoring, 826 F. 2d at 1014 n.10 (citing Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541 (1949)). Here, neither party contends that the collateral order doctrine applies, and the Court independently observes no application. Id. at 1014 n.10 (quoting In re King Mem. Hosp., Inc., 767 F. 2d 1508, 1510 (11th Cir. 1985)).

served in accordance with law and that employer has failed to comply with it, [§ 921(d)] requires the district court to enforce the order." Brown v. Avondale Indus., Inc., BRB No. 11-0407, 46 BRBS 1, 4 (DOL Ben. Rev. Bd. 2012).

## IV. Discussion

Here, the parties devote most of their arguments to the question of whether the Nov. 15, 2016 MIC constitutes a final compensation order which the district court has jurisdiction to enforce pursuant to § 921(d). With regard to this issue, Respondents contend that the Nov. 15, 2016 MIC is not a formal compensation order because the parties did not agree on all issues addressed therein. See Respondents' Motion at 12-13; Respondents' Response at 10-11. Additionally, Respondents argue that the Nov. 15, 2016 MIC is not "final" because the claims examiner did not specify the amount of compensation due. See Respondents' Motion at 13-14; Respondents' Response at 11-16. As such, Respondents seek entry of summary judgment in their favor, or alternatively, an order dismissing this action for want of jurisdiction. See Respondents' Motion at 1, 14-15. Petitioner, on the other hand, contends that both the Nov. 21, 2014 SJ Order and the Nov. 15, 2016 MIC are final formal compensation orders capable of judicial enforcement because collectively, the orders make clear that Respondents were to compensate Petitioner for the expenses listed in Exhibit A, which Respondents have failed to do. See Petitioner's Motion at 5-7; Petitioner's Response at 1-5. As such, Petitioner argues that she is entitled to entry of summary judgment in her favor. See generally Petitioner's Motion. Upon careful consideration of the record, the Court finds that this action is due to be dismissed for lack of subject matter jurisdiction because Petitioner has failed to present

a final, formal compensation order capable of judicial enforcement. Specifically, the Court concludes that the Nov. 15 2016 MIC is not a formal compensation order, and that neither the Nov. 21, 2014 SJ Order nor the Nov. 15, 2016 MIC are final orders which the Court is authorized to enforce pursuant to 33 U.S.C. § 921(d).

First, the Court will address Respondents' contention that the Nov. 15 2016 MIC is not a formal compensation order. See Respondents' Motion at 12-13; Respondents' Response at 10-11. While formal compensation orders are "judicially enforceable," informal memoranda are not. See Brunetti v. Cape Canaveral Shipping Co., S.A., 572 F. Supp. 854, 856 (S.D.N.Y. 1983) (quoting Pallas Shipping Agency, Ltd. v. Duris, 461 U.S. 529, 534 (1983)); Warbington v. Aetna Cas. & Surety Co., 659 F. Supp. 267, 269 (S.D. Miss. 1986) (recognizing that a claims examiner's non-binding recommendations are not final, formal compensation orders). The DBA provides that a claims examiner lacks the authority to issue a formal compensation order before the parties reach an agreement on all issues. See 20 C.F.R. §§ 702.315(a), 702.316; see also Craven v. Dir., Office of Workers' Comp. Program, 604 F. 3d 902, 906 (5th Cir. 2010) ("[W[here the parties do not reach an agreement following the district director's informal recommendation—the district director has no authority to issue a compensation order."); Blakeley v. Silbrico Corp., No. 89 C 1397, 1989 WL 99769, at *2 (N.D. Ill. Aug. 22, 1989). Here, the parties disagreed on critical issues including whether all of the medical bills were related to the work injury, and whether some of the bills had already been paid. Notably, the Nov. 15 2016 MIC is unequivocally titled as a "Memorandum of Informal Conference." See Nov. 15, 2016 MIC at 1. More importantly, it reflects that the parties did not agree regarding the status of Petitioner's bills. Id. at 2. Despite the claims examiner's statement that Petitioner's bills

"seem[ed] legitimate and appear[ed] to be related to medical care for the work related injury," the claims examiner nevertheless acknowledged Respondents' position that there was confusion about the amount due, that it had served subpoenas to obtain information and that it desired sixty days to get the matter resolved. Id. Citing Respondents' position, the claims examiner determined to "allow the time as requested to report back to the District Office and the Claimant regarding the status of the bills." Id. The lack of agreement on all issues and the need to resolve these matters precluded the claims examiner from issuing a formal compensation order.[9]

Notably, when parties do not agree on all issues, the Act permits the claims examiner to schedule additional informal conferences. See 20 C.F.R. § 702.316. After each interim informal conference, the claims examiner is required to prepare a "short, succinct memorandum," and does not have the option of preparing a formal compensation order until after the final informal conference. See 20 C.F.R. § 702.315(b). In the Nov. 15 2016 MIC, the claims examiner recommended providing Respondents with 60 days to obtain and review Petitioner's medical records and report back to the District Director's office to determine which of Petitioner's medical bills remained unpaid. See Nov. 15,

---

[9] The parties also disagree as to the scope of the Nov. 15, 2016 MIC. Respondents contend that because Petitioner's request for reimbursement before the claims examiner was limited to her travel expenses and bills from the pain management physician, that the claims examiner's recommendation of reimbursement was similarly limited. See Respondents' Motion at 5-6. On the other hand, Petitioner contends that she sought reimbursement for all of the bills listed in Exhibit A, and therefore, the claims examiner recommended that Respondents reimburse Petitioner for all listed expenses. See Petitioner's Motion at 6. However, the proper interpretation of an ambiguous order does not bear on whether or not it constitutes a formal compensation order capable of judicial enforcement pursuant to § 921(d). See Bray v. Dir., Office of Workers' Comp. Programs, 664 F. 2d 1045, 1047 (5th Cir. Unit B 1981) (recognizing that to clarify orders which are "ambiguous or unclear," parties may bring enforcement actions, at least under § 918.).*

* This case is binding precedent pursuant to Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir. 1982).

2016 MIC at 3. The fact that Respondents were expected to report back to the District Director's office reflects that the Nov. 15 2016 MIC was a "short, succinct memorandum" prepared in summation of an interim conference, instead of a formal compensation order prepared after a final conference.

Further, the Nov. 15 2016 MIC does not appear to comply with the procedural requirements for formal compensation orders. Specifically, the Act requires that formal compensation orders must be "filed and served in accordance with" the requirements of section 702.349. See 20 C.F.R. § 702.315(a). Here, the record contains no indication that the Nov. 15 2016 MIC was filed and served in such a manner. Petitioner has failed to present any evidence that the Nov. 15 2016 MIC was filed with the district director, that the records were formally dated and filed in the district director's office, or that the order was served on the parties, within the appropriate timeframe, let alone by certified mail. As such, the Court is of the view that Petitioner has failed to establish that the Nov. 15 2016 MIC is a formal compensation order. See Bergeron v. Atl. Pac. Marine, 62 F. 3d 392, No. 93-5471, 1995 WL 449782, at *2 (5th Cir. 1995) (finding that the petitioner failed to present a compensation order due to the failure to comply with section 702.349).

Additionally, the Court finds that this action is due to be dismissed because neither the Nov. 21, 2014 SJ Order nor the Nov. 15 2016 MIC are final orders capable of judicial enforcement. It is settled that where an order is not "final," the court lacks subject matter jurisdiction to enforce it. See Cooper Stevedoring, 826 F. 2d at 1012; see also Kehl v. Martin Paving Co., No. 98-1243-CIV-ORL-18B, Endorsed Order (M.D. Fla. June 3, 1999), adopting, 1999 WL 395322 (M.D. Fla. May 4, 1999) (recommending the dismissal of an action brought pursuant to § 921(d) to enforce a compensation order for lack of

jurisdiction).   As a general rule, to be final for purposes of enforcement, "the order must at a minimum specify the amount of compensation due or provide a means of calculating the correct amount without resort to extra-record facts which are potentially subject to dispute between the parties."   Lazarus v. Chevron U.S.A., Inc., 958 F. 2d 1297, 1303 (5th Cir. 1992) (quoting Severin v. Exxon Corp., 910 F. 2d 286, 289 (5th Cir. 1990)); see also Stetzer v. Logistec of Conn., Inc., 547 F. 3d 459, 464 (2d Cir. 2008) (same); Grabert v. Besco Tubular, BRB No. 17-314, 2017 WL 3333101, at *3 (DOL Ben. Rev. Bd. July 25, 2017) (same); Cohen v. Pragma Corp., 445 F. Supp. 2d 15, 16-17 (D.D.C. 2006) (enforcing an order to the extent the ALJ stated the amount due, but refusing to enforce the general award of "future medical benefits.").   A compensation order which fails to do so is not final, and therefore, not capable of judicial enforcement pursuant to § 921(d).

First, the Court finds that the Nov. 21, 2014 SJ Order is not a final order capable of judicial enforcement.   Notably, although Petitioner states in passing that the Nov. 21, 2014 SJ Order "is a final compensation order," Petitioner presents no argument to support this assertion.   See Petitioner's Motion at 3.   Further, the Court is persuaded by Judge Catherine C. Eagles' finding in the N.C. Action that the Nov. 21, 2014 SJ Order was not a final order capable of judicial enforcement.   See N.C. Order at 5-6.   Specifically, Judge Eagles determined:

> While it certainly appears that [the Nov. 21, 2014 SJ Order] is final in the sense that liability has been resolved, the ALJ neither specified an amount of compensation nor determined which treatment or bills Chemonics had to pay based on "the nature of [Ms. Crigler's] injury or the process of her injury or the process of her recovery."   Instead, the ALJ required the district director to "make all computations necessary to effect this Order."   Ms. Crigler does not allege that the Director has made such computations, nor is there anything else in the record to show that Ms. Crigler has requested such a computation or otherwise received a decision containing an amount of compensation.

Id. at 5 (internal citations omitted).  This Court agrees that a plain reading of the Nov. 21, 2014 SJ Order demonstrates that the ALJ did not specify the amount of compensation due.  See generally Nov. 21, 2014.  Indeed, Petitioner's contention that the Nov. 21, 2014 SJ Order finally determined the amount Respondents owe is belied by Petitioner's assertion that the claims examiner made the necessary computations in the Nov. 15, 2016 MIC.  See Petitioner's Motion at 6; Petitioner's Response at 2.  Thus, the Court is of the view that the Nov. 21, 2014 SJ Order is not a final order capable of judicial enforcement.

Additionally, the Court finds that the exact amount of compensation due based on the Nov. 15, 2016 MIC cannot be determined "without resort to extra-record facts which are potentially subject to dispute between the parties."  Lazarus, 958 F. 2d at 1303.  While Petitioner contended that she was entitled to reimbursement for all expenses listed in Exhibit A, Respondents contended that "some of the bills were outdated and ha[d] been paid."  See Nov. 15, 2016 MIC at 2.  In the Nov. 15, 2016 MIC, the claims examiner recognized that Respondents would need to "review their records" to determine whether Petitioner's bills had been paid.  Id.  Once Respondents reviewed Petitioner's subpoenaed medical records, the parties did, in fact, dispute the degree to which Petitioner was entitled to reimbursement.  See generally Status Report.  In Respondents' Status Report, Respondents argued that Petitioner's medical records demonstrated that not only were the bills listed in Exhibit A outdated, but also that Petitioner sought reimbursement for procedures that she never undertook and which were completely unrelated to her claim.  Id. at 2-5.  As such, the record reflects that the exact amount of compensation due had not been determined as of the date of the Nov. 15, 2016 MIC and could not be determined without consideration of Respondents' records and outstanding subpoenas, which were

not part of the disputed record before the claims examiner. "In the absence of a set figure for [Petitioner's unpaid expenses], it was impossible for the [claims examiner] to calculate the compensation owed to [Petitioner] and for [Respondents] to comply with the compensation order." Severin, 910 F. 2d at 289. As such, the Nov. 15, 2016 MIC is not a final order capable of enforcement.

### V. Conclusion

Because Petitioner has failed to present a final, formal compensation order capable of judicial enforcement pursuant 33 U.S.C. § 921(d), this action is due to be dismissed for lack of subject matter jurisdiction. As such, the Court need not address Petitioner's contention that Respondents have failed to comply with their obligations in the administrative proceedings, or Petitioner's request for attorney's fees and costs in this action. See Petitioner's Motion at 6-7. In light of the foregoing it is

**ORDERED**:

1. Petitioner Lauren Crigler's Motion for Summary Judgment and Memorandum of Law (Doc. 21) is **DENIED**.

2. Respondents' Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 23) is **GRANTED** to the extent that Respondents seek dismissal of this action without prejudice.

3. This case is **DISMISSED without prejudice**, and the Clerk of Court is directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida this 16th day of August, 2018.

*Marcia Morales Howard*
MARCIA MORALES HOWARD
United States District Judge

Lc 25
Copies to:
Counsel of Record